## THE ELBERON.

## NEW YORK & L. B. S. CO. v. RIKER.

(Circuit Court of Appeals, Second Circuit. November 7, 1895.)

COLLISION BETWEEN STEAMER AND SAIL—YACHT MOORED IN RIVER.

A yacht moored in shallow water at a dock on the extreme edge of the channel of a narrow river, in a place where she might lawfully have anchored if no dock had been there, was struck by a steamer, which was navigating the channel under the ordinary conditions of wind and tide. *Held*, that the steamer alone was liable, even if the dock was built without compliance with the regulations in regard to obtaining permission to build docks.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by William J. Riker against the steamboat Elberon, the New York & Long Branch Steamboat Company, claimant, to recover damages occasioned to libelant's yacht by a collision of the steamboat with her. The district court entered a decree for the libelant, and the claimant appealed. The following opinion was filed by BROWN, District Judge, in the court below:

"About 7:15 a. m., on the 31st of July, 1893, as the libelant's yacht Charlotte was lying in the easterly edge of the channelway in the South Shrewsbury river, alongside of the western face of the dock, she was damaged by a collision with the starboard quarter of the steamboat Elberon, which was on one of her regular trips from Branchport to New York. The above libel was filed to recover the damages.

"The defendant claims that the collision happened because the yacht was improperly moored at a dangerous point a little below the bend in the river, and because of the narrowness of the channel and of a strong west wind which set the Elberon unavoidably against the yacht before she could recover from the turn around the point below; and that the owner of the yacht had been repeatedly requested to remove her from that position. The preponderance of evidence, however, shows that the wind was light, and not above six or seven knots; and that no unusual conditions of wind and tide existed; and from the navigation of other boats of the line shortly before, as well as by the Elberon herself, before and after, I am quite satisfied that this collision arose from lack of suitable caution at the time of turning the point, and afterwards, and not from the causes alleged by the Elberon.

"It is immaterial, upon the above view, whether all the regulations in regard to permission to build the dock in question were complied with or not. The navigation and use of the Shrewsbury river was as lawful for yachts as for the line of boats to which the Elberon belonged. The channelway was, indeed, narrow; but the yacht was upon the extreme edge of it, in shallow water, where, so far as I can see, she might have been lawfully anchored, even had there been no dock there. She was at a considerable distance below the bend in the river; and in anchoring there all that was required of her was that she should leave a sufficient and reasonable share of the water for the navigation of the Elberon and other boats of her line; and this, as I find, was done.

"The libelant is entitled to a decree, with costs."

Geo. A. Black, for appellant.

Anson B. Stewart, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Decree affirmed, on opinion of the district judge.